UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEAH WEST, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAMBAZON, INC., and ECOCERT USA,<br><br>Defendants. | Case No. 23-2961<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Leah West ("West"), individually and on behalf of herself and other similarly situated individuals, by and through her counsel, hereby files this Class Action Complaint for equitable relief and damages against Sambazon, Inc. ("Sambazon") and Ecocert USA's ("Ecocert") Fair for Life ("FFL") certification (collectively, "Defendants") regarding their false and deceptive marketing and sale of Sambazon's Fair for Life Certified Açaí Products (the "Products")[1] as ethically sourced and made without the use of child labor. Sambazon markets the Products as upholding "fair wages and labor practices" and being free from child labor, and Ecocert, for a profit, lends its name to this marketing. The supply and production of these Products, however, contribute to grievous and unsustainable labor abuses, including hazardous child labor, that are endemic in the açaí industry. Reasonable consumers seeking to buy ethically sourced açaí products are misled both by Ecocert's independent representations that its certification protects

---

[1] Sambazon markets all of its açaí products as Fair Trade and ethically sourced, including but not limited to its Superfruit Packs, Ready to Eat Bowls, Sorbets, and Fresh Juices. *See Products*, Sambazon, https://www.sambazon.com/collections (last visited Apr. 4, 2023). All açaí products marketed this way by Sambazon fall within the scope of this Complaint.

1

children and young people and by Sambazon's representations that the Products are "ethically sourced" and free from child labor.

## INTRODUCTION

1. This is a consumer-protection case concerning deceptive marketing representations made about Sambazon's Fair for Life-certified açaí products.

2. The use of fair and sustainable labor practices is of growing concern to consumers, who increasingly seek out products that are made without the use of forced labor, child labor, or exploitative working conditions, especially in industries known for their use of such practices.

3. Açaí farming is an industry known for such practices. The mechanics of harvesting açaí involve scaling tall and spindly trees that cannot bear much weight—which means that children are often the ones responsible for scaling these trees.[2] The work is inherently dangerous; injuries such as those that come from falling out of trees are common and sometimes fatal.

4. Consumers who wish to purchase more ethical products in industries that employ these practices rely on the products' packaging, marketing, advertising, and relevant certifications to purchase products that align with their values, and to avoid abuses in labor.

5. Defendant Sambazon, a privately held company based in California, is one of the largest producers and merchants of açaí products nationwide.

6. Defendant Ecocert USA ("Ecocert") is a certification organization that "provides certification for 150+ standards in the food, farming, forestry, textiles, cosmetics and eco-products sectors worldwide."[3]

---

[2] Terrence McCoy, *Small children are climbing 60-foot trees to harvest your açaí*, The Washington Post (Nov. 28, 2021), https://www.washingtonpost.com/world/2021/11/28/brazil-açaí-child-labor/.
[3] *Certification*, Ecocert, https://www.ecocert.com/en-US/certification (last visited Nov. 9, 2022).

2

7. One certification for which Ecocert owns the rights is Fair for Life. In this capacity, Ecocert "is in charge of managing the governance of the Program, i.e. the evolution of the standard, the certification protocol, policies etc."[4]

8. Sambazon pays for the Fair for Life certification by Ecocert, which purports to "guarantee that producers and workers . . . work for a fair wage and under good and respectful conditions, in a sustainable environment" and that "no children are employed as workers."[5]

9. Ecocert further claims that the objective of the Fair for Life certification is to "[e]nable a large range of fair trade products to be available to consumers; make them aware of their influence as responsible consumers, and positively influence their purchasing decisions."[6]

10. In reality, however, Sambazon purchases outside of its registered network, and the Fair for Life certification audits less than three percent of its açaí producers, and even these minimal audits have been shown to be inadequate for detecting child labor.[7] Thus, Sambazon cannot substantiate its claims that the Products are ethically sourced or free from the child labor practices that are prevalent throughout the açaí industry.

11. Consequently, Defendants' marketing—which represents that the Products are "ethically sourced" and free from child labor—is false and misleading.

12. By deceiving consumers about the nature of the Product, Sambazon is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take market share away from competing products, thereby increasing its own sales and profits.

---

[4] *Fair for Life Certification Protocol*, Fair For Life, at 3, (May 2022), https://www.fairforlife.org/client/fairforlife/file/Fair_for_Life/Standars/FFL_Certification_Protocol.pdf.
[5] *Certification standard for Fair Trade and responsible supply-chains*, Fair for Life, at 6, 27, (May 2022), https://www.fairforlife.org/client/fairforlife/file/Standard/Fair_for_Life_Standard_EN.pdf.
[6] *Id.* at 6.
[7] Terrence McCoy, *supra* note 2.

13. By allowing Sambazon to use its certification to deceive consumers, on information and belief, Ecocert profits from licensing and other fees, and profits more when Sambazon sells more of the Products. Ecocert thus colludes with Sambazon to profit through consumer deception.

14. By allowing Sambazon to use its certification to deceive consumers, and by promoting that certification for the purpose of increasing Product sales, Ecocert participates in the marketing of the Products.

15. Because Defendants' marketing of the Products tends to mislead and is materially deceptive about the true nature and quality of the Products, Plaintiff West brings this case on behalf of herself, and all others similarly situated and seeks equitable and monetary relief.

## FACT ALLEGATIONS

### I. Defendants Represent that the Products Are Ethically Sourced and Free from Child Labor.

16. On its Products, Sambazon makes numerous representations to consumers about its fair and ethical production practices.

17. For example, on the back of its Products, Sambazon directly appeals to consumers who are concerned about the ethical impact of their purchases: "Every time you enjoy [the Products] you're . . . directly giving back to family farmers who harvest wild Açaí" by driving "Fair Wages & Labor Practices."[8]

---

[8] *See, e.g.*, *Sambazon Açaí Original Blend Superfruit Frozen Smoothie Packs*, Target, https://www.target.com/p/sambazon-a-231-a-237-original-blend-superfruit-frozen-smoothie-packs-400g/-/A-53838148 (last visited Apr. 4, 2023).

4





18. Sambazon also directly represents to consumers on these packages that it employs "Fair Wages & Labor Practices" and that it is "Fair for life" certified.

19. Should any consumer who sees these representations on the Product packaging seek more information, Sambazon repeats and even expands the promises on-line.

5

20.     For example, Sambazon represents that purchasing the Products is a way to help the Amazon (environmental) and to help the people of the Amazon River Basin (labor and human rights): "Each time you purchase a SAMBAZON product, you can feel good knowing you are helping the Amazon and its people . . . ."[9]

21.     Sambazon also makes representations on its websites that all Sambazon products are "ethically sourced"[10] and that it "care[s] for the people [it] works with."[11]

22.     Sambazon represents that it can ensure that its Products are ethically sourced and free from child labor because it "oversee[s] every step of its [the Products'] journey."[12]

23.     As purported substantiation for these claims, Sambazon represents that it has a thorough and traceable supply chain, and invokes the notion of "fair trade food":

> "**We believe in transparency**. And we understand how important it is to know the food you and your family consume is of the highest quality, while also being ethically sourced, transported, and processed. By creating our own supply chain, we can oversee every step of its journey, from the moment our fair trade food is hand-harvested and transported by riverboats, to its inspection (by hand) and environmentally responsible processing. It's our guarantee to you: **From the palm of the tree to the palm of your hand**."[13]

24.     Sambazon invokes Ecocert's Fair for Life certification to advertise its commitment to ethical sourcing, stating that this certification means that it is following "rigorous standards" regarding its "respect of human rights and fair working conditions."[14]

25.     In particular, Sambazon claims that the Fair for Life certification means that it is "ensuring no child/slave labor occurs."[15]

---

[9] *Why We Exist*, Sambazon, https://bit.ly/3Ub8a9o (last visited Apr. 4, 2023).
[10] Zoe Oksanen, *Palm to Palm: Our Commitment to Fair Trade Açaí*, Sambazon, (Jan. 18, 2022), https://www.sambazon.com/blogs/sustainability/palm-to-palm-our-commitment-to-fair-trade-açaí.
[11] *Why We Exist*, *supra* note 9.
[12] *Palm to Palm: Our Commitment to Fair Trade Açaí*, *supra* note 10.
[13] *Id*.
[14] Zoe Oksanen, *How Well Do You Understand Fair Trade*, Sambazon (Oct. 8, 2019) https://www.sambazon.com/blogs/sustainability/how-well-do-you-understand-fair-trade?_pos=2&_sid=cee664ae1&_ss=r.
[15] *Id*.

6

26. On information and belief, Sambazon makes claims about Fair for Life certification with the support and encouragement of Ecocert, which receives benefits to its own interest through Sambazon's use of the certification.

27. In fact, Ecocert backs up Sambazon's marketing. Ecocert tells consumers that its Fair for Life ensures that "no children are employed as workers" and that "no work is carried out by children of contracted workers."[16]

28. Ecocert also represents that one of its core commitments is to "Respect Human Rights and offer Decent Working Conditions to improve the living conditions and well-being of workers and their families."[17]

## II. Sambazon's Fair for Life's Açaí Products are Not Ethically Sourced and Are Linked to Child Labor.

29. Contrary to the marketing representations made by Sambazon and Ecocert about the Products being ethically sourced without child labor, Sambazon's Fair for Life Açaí Products are produced with labor practices that consumers understand to be unethical, including dangerous and unregulated working conditions and children engaging in hazardous labor.

30. Because there is no widespread mechanized process for açaí harvesting, it requires people to scale the thin trees that hold the fruit—trees that can run as tall as sixty-five feet. Often, this is done only with burlap swatches to protect the climber's feet and machetes to cut down the fruit.[18]

31. Because the trees are spindly, they are unable to hold the weight of most adults. As a result, it is often children who are tasked with making the climb to harvest the fruit.[19]

---

[16] *Certification standard for Fair Trade and responsible supply-chains*, *supra* note 5 at 27.
[17] *Fair For Life Commitments*, Fair for Life, https://www.fairforlife.org/pmws/indexDOM.php?client_id=fairforlife&page_id=root_2_4&lang_iso639=en (last visited Apr. 4, 2022).
[18] Terrence McCoy, *supra* note 2.
[19] *Id*.

32. "Children's labor is a crucial element in the extraction process."[20] Furthermore, due to the growing market for açaí, children who once climbed one or two trees a day now "climb[] ten or more times and even jump[] from one tree to another."[21]

33. Hazardous child labor is so endemic in açaí production that the U.S. Department of Labor recently added açaí to its 2022 "List of Goods Produced by Child Labor or Forced Labor."[22]

34. Unsurprisingly given the nature of this practice, falls and other injuries happen with disturbing regularity.

35. A study by the Pará and Amapá state labor tribunal in 2016 found that nine out of ten açaí farmers said that someone in their family had suffered an accident working in the industry, more than half of which required hospitalization.[23]

36. In fact, about eighteen percent of reported traumas caused by falls at a major hospital in Brazil are from those who fall from açaí trees when picking the fruit.[24]

37. Sambazon's claims that it avoids these endemic issues because it "oversee[s] every step" of the Products' production[25] are not supported by the realities of its supply chain.

38. For example, two açaí merchants in Brazil said that "Sambazon buys fruit outside its registered network, exposing it to the possibility of purchasing fruit harvested by children. The

---

[20] Monte Dawn Talley, *Paradoxes in Sustainable Rainforest Production: Childhood and Child Labor in Açaí Extraction in the Brazilian Amazon*, Vanderbilt University (July 25, 2019), https://etd.library.vanderbilt.edu/etd-07182019-112608.

[21] Instituto Peabiru, '*O peconheiro*' *Diagnóstico das condições de trabalho do extrativista de açaí* ['The Fisherman' Diagnosis of the working conditions of the açaí extractavist] (May 2016), https://peabiru.org.br/wp-content/uploads/2016/11/o-peconheiro-diagnostico-açaí-peabiru-fundacentro.pdf.

[22] *See* United States Department of Labor, *2022 List of Goods Produced by Child Labor* (Sept. 2022), https://www.dol.gov/sites/dolgov/files/ILAB/child_labor_reports/tda2021/2022-TVPRA-List-of-Goods-v3.pdf.

[23] Terrence McCoy, *supra* note 2.; *see also* Instituto Peabiru, *supra* note 21.

[24] *Accidents in açaí trees worry doctors*, Diario Online (July 16, 2012), http://www.diarioonline.com.br/noticias-interna.php?nIdNoticia=210729.

[25] *Palm to Palm: Our Commitment to Fair Trade Açaí*, *supra* note 10.

8

merchants, João Rodrigues Fernandes and Valdinei Borges Farias, said they have sold to ships supplying Sambazon, with no questions asked about working conditions or child labor."[26]

39. Sambazon's failure to ensure that the Products are ethically produced and free from child labor is not rectified by its partnership with Ecocert. In fact, the partnership exacerbates the consumer deception.

40. Although Ecocert that its Fair for Life certification ensures that the Products are produced ethically, Ecocert audits only about three percent of suppliers annually—meaning it has no way to substantiate these claims of ethical production.[27]

41. In addition to auditing only a small percentage of farms, Ecocert gives advance notice of its Fair for Life audits to community leaders, meaning any child labor can be easily hidden from the few checks that do actually occur.[28]

42. People working on the ground in the Amazon have identified other ways in which the Ecocert Fair for Life scheme fails to protect children and workers.

43. For example, while Sambazon's "[c]ertification specialists tell families not to send children to harvest . . . many are unable to honor the request because they can't afford to lose the income provided by a child's work. Sambazon does not pay extra money to individual farmers, the former employees said, to incentivize them to follow the labor practices prescribed by certifiers."[29]

44. Thus, although Sambazon and Ecocert tell consumers that the Products are "ethically sourced" and "no child labor occurs" the reality of the Products' supply chain reveals that these claims are false and deceptive.

---

[26] *See* Terrence McCoy, *supra* note 2.
[27] *Id*.
[28] *Id*.
[29] *Id*.

**III.     Defendants' Representations Are Material and Misleading to Consumers.**

45.     Sambazon's false and misleading representations that the Fair for Life certified Açaí Products are made following "rigorous standards" in regard to its "respect of human rights and fair working conditions" and that "no children are employed as workers"—representations made with the support and encouragement of Ecocert—are material to consumers.

46.     Consumers care deeply about exploitive labor practices in supply chains. A national survey found that "60 percent of consumers would stop using a product if they knew that human trafficking or forced labor was used to create it."[30]

47.     A majority of consumers would stop buying from brands that they believe are unethical. Moreover, "over one third (35 percent) of consumers would stop buying from brands they perceive as unethical even if there is no substitute available."[31] Additionally, 63 percent of "consumers feel that ethical issues are becoming more important."[32]

48.     A survey of 5,000 consumers showed that significant segments of the national consumer base prioritize "more transparency from food producers and retailers," "accountability and transparency through the entire food supply chain," and "fair treatment of workers."[33]

49.     When it comes to child labor, more than seventy-five percent of consumers would no longer purchase from brands they knew were employing child labor, even if the consumers had often bought from these brands in the past.[34]

---

[30] Stephen DeAngelis, *Even If Consumers Aren't Aware of Human Trafficking, Companies Need to Be*, Enterra Solutions, (Mar. 6, 2020), https://enterrasolutions.com/blog/even-if-consumers-arent-aware-of-human-trafficking-companies-need-to-be/.
[31] *56% of Americans Stop Buying From Brands They Believe Are Unethical*, Mintel (Nov. 18, 2015), https://bit.ly/3ZmfXlC.
[32] *Id.*
[33] News Desk, *Consumer Survey Shows Changing Definition of Food Safety*, Food Safety News, (Feb. 4, 2016) https://www.foodsafetynews.com/2016/02/123246/.
[34] Kate Andrews, *A New Survey on Child Labor Reveals Americans' Views*, Child Fund (July 18, 2013), https://www.childfund.org/Content/NewsDetail/2147489042/.

50. Defendants' documented failures to ensure that the Products are "ethically sourced" and free from child labor are misleading to these concerned consumers, given the way that Sambazon markets the Products with Ecocert's approval.

## JURISDICTION AND VENUE

51. This Court has personal jurisdiction over the parties in this case.

52. Defendant Sambazon is incorporated and headquartered in California.

53. Defendant regularly conducts and transacts business in New York, purposefully avails itself of the laws of New York, markets the Product to consumers in New York, and sells the Product throughout New York.

54. Defendant Ecocert, which owns and licenses the Fair for Life certification,[35] and which operates in the United States as Ecocert USA, is a "certification standard for Fair Trade and responsible supply-chains."[36] Ecocert USA has offices in Indiana.[37]

55. Plaintiff West is a citizen of New York and consents to this Court's jurisdiction.

56. This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class comprises at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiff West alleges that the total claims of individual members of the proposed Class (as defined herein) exceed $5,000,000 in the aggregate, exclusive of interest and costs.

---

[35] *Fair for Life*, Ecocert USA, https://www.ecocert.com/en/certification-detail/fair-trade-fair-for-life (last visited June 10, 2022).
[36] *Fair for Life Programme*, Fair for Life, https://www.fairforlife.org/pmws/indexDOM.php?client_id=fairforlife&page_id=ffl&lang_iso639=en (last visited Apr. 5, 2023).
[37] *Our local offices*, Ecocert, https://www.ecocert.com/en/offices (last visited Apr. 5, 2023).

57. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of the Products, occurred within this District.

**PARTIES**

58. Plaintiff Leah West is an individual consumer who is a currently a citizen of Yorktown Heights, New York.

59. During the Class Period, Plaintiff West purchased Sambazon's Original Açaí Fresh Juice, one of the Products at issue, one-to-two times per month at various stores including Whole Foods in Danbury, CT and Stop & Shop in Westchester, NY.

60. Plaintiff West, when she purchased the Product, saw and believed that the Sambazon's Products support fair wages and labor practices, based on the Products' packaging and Fair for Life certification, which was advertised with Ecocert's consent. The fair-trade representations of the Products were material to Plaintiff West and encouraged her to make her purchases. Plaintiff West relied upon these representations, which as a consumer she had no reason to doubt.

61. Plaintiff West would not have purchased the Product or would not have purchased the Product on the same terms, if she had known that contrary to Defendants' representations, the Product was sourced using child labor.

62. As a direct result of Defendants' material misrepresentations and omissions, Plaintiff suffered, and continues to suffer, economic injuries.

63. On March 7, 2023, Plaintiff sent Sambazon a letter about the allegations set forth in this Complaint.

64. On April 5, 2023, Plaintiff sent Ecocert a letter about the allegations set forth in this Complaint.

65. Accordingly, Plaintiff West, on behalf of herself and all other members of the proposed Class, seeks relief, including punitive damages, from Defendants' acts and practices.

## **CLASS ALLEGATIONS**

66. Plaintiff West brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated individuals nationwide (the "Class"), defined as follows:

> All consumers who purchased the Products within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

67. Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Product (as defined herein) in New York during the Class Period (the "New York Subclass").

68. Excluded from the Class are (1) Defendants, (2) any entity or division in which either Defendant has a controlling interest, (3) Defendants' legal representatives, officers, directors, assigns, and successors; and (4) the judge to whom this case is assigned and the judge's staff.

69. Questions of law and fact common to all Class members predominate over questions affecting only individual Class members. These common questions of law and fact include, without limitation:

   (a) Whether, and in which proportion, Defendants are responsible for the advertising at issue;

   (b) Whether the advertising of the Products was unfair, false, deceptive, fraudulent and/or unlawful;

(c) Whether Defendants breached a warranty created through the marketing of the Products; and

(d) Whether Defendants' conduct as set forth above injured Plaintiff West and Class members.

70. Plaintiff West's claims are typical of the claims of the Class in that she was exposed to Defendants' false and misleading marketing and promotional materials and representations, purchased the Product, and suffered a loss as a result of those purchases.

71. The precise number of the Class members and their identities are unknown to Plaintiff West at this time but may be determined through discovery.

72. Plaintiff West is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions involving false advertising, and she intends to prosecute this action vigorously.

73. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the litigation necessary to establish Defendants' liability. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the potential for inconsistent or contradictory judgments. The substantive claims of Plaintiff West and the Class are identical or nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

74. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually,

and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff West's and the Class members' claims together is manageable. Unless the Class is certified, Defendants will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

75. No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

76. The prerequisites to maintaining a class action for equitable relief are met. By representing that the Product sold by Defendants "guarantee[s] that producers and workers . . . work for a fair wage and under good and respectful conditions, in a sustainable environment" and by omitting the likelihood of child labor,[38] Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

77. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions could be dispositive of the interests of the Class, in practice, even where certain Class members are not parties to such actions.

78. Defendants' conduct is generally applicable to the Class as a whole, and Plaintiff West seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

79. Plaintiff West knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

---

[38] *See supra* ¶ 8.

## CAUSES OF ACTION

### COUNT I
### Violations of the New York General Business Law § 349
### (On Behalf of Plaintiff West and the New York Subclass)
### (Against All Defendants)

80. Plaintiff West realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

81. The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

82. Defendants market the Products as "ethically sourced," when investigation by Plaintiff West and her counsel show the Products were sourced using dangerous child labor practices.

83. Defendants have violated, and continue to violate, § 349 of the New York General Business Law ("NYGBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendants' violation of § 349, Plaintiff West and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

84. Defendants' improper consumer-oriented conduct is misleading in a material way in that they, *inter alia*, induced Plaintiff West and the New York Subclass members to purchase and to pay the requested price for the Product when they otherwise would not have, or would not have purchased as much.

85. Defendants made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

86. Plaintiff West and the New York Subclass members have been injured by their purchase of the Products, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

87. Defendants' advertising induced Plaintiff West and the New York Subclass members to buy the Products, to buy more of them, and/or to pay the price requested.

88. As a direct and proximate result of Defendants' violation of § 349, Plaintiff West and other members of the New York Subclass paid for falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

89. By reason of the foregoing, Plaintiff West and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 349(h).

## COUNT II
### Violations of the New York General Business Law § 350
### (On Behalf of Plaintiff and the New York Subclass)
### (Against Defendant Sambazon Only)

90. Plaintiff West realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

91. The acts of Defendant Sambazon, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

92. New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

93. NYGBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

94. Plaintiff West and the members of the New York Subclass are consumers who purchased Defendant Sambazon's Products in New York.

95. As a seller of goods to the consuming public, Defendant Sambazon is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

96. Defendant Sambazon's representations (made by statement, word, design, device, sound, or any combination thereof), and also the extent to which Sambazon's advertising has failed to reveal material facts with respect to its Products, as described above, have constituted false advertising in violation of § 350.

97. Defendant Sambazon's actions led to direct, foreseeable, and proximate injury to Plaintiff West and the members of the New York Subclass.

98. As a consequence of Defendant Sambazon's deceptive marketing scheme, Plaintiff West and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products, and/or would have purchased less of the Products. As a result of Sambazon's conduct, Plaintiff West and the other members of the New York Subclass received products of less value than what they paid for.

99. By reason of the foregoing, Plaintiff West and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 350-e(3).

### COUNT III
**Breach of Express Warranty**
**(on Behalf of Plaintiff West and All Class Members)**
**(Against All Defendants)**

100. Plaintiff West realleges and reincorporates by reference all paragraphs alleged above.

101. Plaintiff West brings this claim individually and on behalf of the Class.

102. Defendants provided and other members of the Class with written, express warranties that "Fair Wages & Labor Practices" are employed in the Products' production and that "no child labor" occurs in their supply chain.

103. These affirmations of fact or promises by Defendants relate to the goods and became part of the basis of the bargain.

104. Plaintiff West and members of the Class purchased the Products believing them to conform to the express warranties.

105. Defendants Sambazon and Ecocert breached these warranties, resulting in damages to Plaintiff West and other members of the Class, who bought Defendants' Products but did not receive the goods as warranted.

106. As a proximate result of the breach of warranties by Sambazon and Ecocert, Plaintiff West and the other members of the Class did not receive goods as warranted. Moreover, had Plaintiff West and the Class members known the true facts, they would not have purchased Defendants' Products, or would have purchased the Products on different terms, or would have purchased fewer of the Products.

107. Notice of these breaches of warranty was provided to Defendants as described in *supra* ¶¶ 63, 64, which is incorporated here by reference as if fully set forth herein.

108. Plaintiff West and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff West respectfully requests that the Court enter judgment in her favor and in favor of the Class as follows:

A. An order certifying the proposed Class and Subclass; appointing Plaintiff West as representative of the Class and Subclass; and appointing Plaintiff West's undersigned counsel as class counsel for the Class and Subclass;

B. An order declaring that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C. An order declaring that Defendants' conduct violates the statutes referenced herein;

D. An order awarding monetary damages, including actual damages, statutory damages, and punitive damages, in the maximum amount provided by law under the statutes named herein;

E. An order awarding compensation for breach of warranty;

F. An order for prejudgment interest on all amounts awarded;

G. An order awarding Plaintiff West and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H. Any further relief that the Court may deem appropriate.

## **JURY TRIAL DEMANDED**

109. Plaintiff West hereby demands a trial by jury.

DATED: April 7, 2023

**RICHMAN LAW & POLICY**

_____
Kim E. Richman
1 Bridge Street, Suite 83
Irvington, NY 10533
T: (914) 693-2018
krichman@richmanlawpolicy.com