UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
LEAH WEST, individually and on behalf of all
others similarly situated,

                              Plaintiff,                   **OPINION & ORDER**

    - against -                              No. 23-CV-2961 (CS)

SAMBAZON, INC., and ECOCERT USA,

                              Defendants.
----------------------------------------------------------------x

Appearances:

Kim E. Richman
Richman Law & Policy
Irvington, New York
*Counsel for Plaintiff*

Brian D. Koosed
K&L Gates LLP
Washington, D.C.

Caitlin C. Blanche
K&L Gates LLP
Irvine, California
*Counsel for Defendant Sambazon, Inc.*

Todd A. Roberts
Ropers Majeski PC
Menlo Park, California
*Counsel for Defendant Ecocert USA*

Seibel, J.

       Before the Court are the motions to dismiss Plaintiff's First Amended Complaint of

Defendant Sambazon, Inc., (ECF No. 31), and Defendant Ecocert USA LLC, (ECF No. 37),

under Federal Rule of Civil Procedure ("FRCP") 12.  For the reasons set forth below,

Defendants' motions are GRANTED.

I.    **BACKGROUND**

For purposes of these motions, the Court accepts as true the facts, but not the conclusions, alleged by Plaintiff Leah West in her First Amended Complaint.  (*See* ECF No. 29 ("FAC").)

A.    **Facts**

Defendant Sambazon, Inc. ("Sambazon") is a privately held company incorporated and headquartered in California, (FAC ¶¶ 5, 69), and is one of the "largest producers and merchants of açaí products nationwide," (*id.* ¶ 5).  Sambazon markets and sells its products to consumers in New York (among other places).  (*Id.* ¶ 70; *see id.* ¶ 77.)  Defendant Ecocert USA LLC[1] ("Ecocert") is an Indiana-based company, (*id* ¶ 71), that Plaintiff alleges "provides certification for 150+ standards in the food, farming, forestry, textiles, cosmetics and eco-products sectors worldwide," (*id.* ¶ 6), and owns the rights to the Fair for Life ("FFL") certification, (*id.* ¶ 7).  In its capacity as the owner of that certification, Ecocert "is in charge of managing the governance of the [FFL] program, i.e. the evolution of the standard, the certification protocol, policies etc." (*Id.*)

Sambazon pays Ecocert to use the FFL certification on Sambazon's products, and Plaintiff alleges that Sambazon's FFL Certified Açaí Products (the "Products") are advertised as "guarantee[ing] that producers and workers . . . work for a fair wage and under good and respectful conditions, in a sustainable environment" and that "no children are employed as workers."  (*Id.* ¶ 8.)  To support that assertion, Plaintiff points to representations on the Products' packaging about Sambazon's "fair and ethical production practices."  (*Id.* ¶ 19.)  For example, the FAC includes pictures of the packaging for one of the Products that Plaintiff did not purchase

---

[1] The FAC erroneously names Defendant Ecocert USA LLC as "Ecocert USA."  (*See* ECF No. 37 at 1.)  Ecocert USA LLC's sole member is Ecocert, Inc., a Delaware corporation. (*See* ECF No. 37-3 at 127.)

– Sambazon's Açaí Superfruit Packs (the "Superfruit Packs").  (*Id.* ¶ 20.)  The Superfruit Packs

label appears below:



(*Id.*)  Plaintiff highlights the following representations on the Superfruit Packs packaging:

"Every time you enjoy [the Products] you're . . . directly giving back to family farmers who

harvest wild Açaí" and "driving positive impact" by "Fair Wages & Labor Practices."  (*Id.* ¶ 20

(alteration in original).)  Additionally, the packaging includes the FFL certification and the

statement "THE ONLY CERTIFIED FAIR TRADE & ORGANIC AÇAÍ COMPANY."  (*Id.* ¶

20; *see id.* ¶ 21.)  But Plaintiff did not purchase the Superfruit Packs; rather, she purchased a

different product – Sambazon's Original Açaí Fresh Juice (the "Fresh Juice") – several times

over an unspecified period[2] at various stores in Danbury, Connecticut and Westchester County,

---

[2] Plaintiff alleges that West purchased the Fresh Juice "[d]uring the Class Period," (*id.* ¶
77), which the FAC defines as "the applicable statute of limitations period," (*id.* ¶ 87).

New York.  (*Id.* ¶ 77.)  While Plaintiff alleges that the challenged representations appear "on the back of [Sambazon's] Products," (*id.* ¶ 20), the FAC does not contain any other pictures of or specifics about the Products' packaging, including the Fresh Juice label.[3]

Plaintiff alleges that Sambazon states on its website that the Products are "ethically sourced" and that Sambazon "cares for the people it works with," (*id.* ¶ 24), emphasizing transparency, commitment to ethical sourcing that is free from child labor, and oversight of the Products' sourcing and production, (*see id.* ¶¶ 22-27).  Sambazon's website also invokes Ecocert's FFL certification to advertise the company's commitment to ethical sourcing and fair labor conditions, purportedly representing that FFL certification "ensur[es] no child/slave labor occurs."  (*See id.* ¶¶ 27-28.)  Plaintiff alleges that Ecocert claims that FFL certification "ensures that basic human rights are respected" and that "efforts are made to improve the[] well-being" of those involved, including with respect to "working hours, health and safety, fair wages and benefits."[4]  (*Id.* ¶¶ 30-32.)  Plaintiff asserts that Ecocert "purposefully conveys to consumers that when a product is Fair for Life-certified, that product's supply chain is free from child labor." (*Id.* ¶ 43; *see id.* ¶¶ 31-43).

Plaintiff contends that Sambazon's representations regarding the Products' ethical sourcing, fair wages and labor practices, and freedom from child labor are false and misleading,

---

[3] The FAC includes a hyperlink to the "Products" page on Sambazon's website, (*see id.* at 1 n.1), from which one can navigate to images of the Products, but it does not include any images of the Fresh Juice purchased by Plaintiff or otherwise direct the Court to the Fresh Juice label.

[4] The FFL certification scheme is based on criteria categorized into three levels, with criteria relating to child labor and the protection of young workers categorized as "KO," (*id.* ¶¶ 33-34), meaning that failure to meet the stated objective "jeopardizes the certificate with immediate effect," (*id.* ¶ 34), and if a non-conformity with a KO requirement is substantiated, it will "lead to a refusal or a reduction/withdrawal of your certificate," (*id.* ¶ 42).

(*see id.* ¶¶ 14, 61), because, contrary to Defendants' statements and the FFL certification, the Products "are produced with labor practices that consumers understand to be unethical, including dangerous and unregulated working conditions and children engaging in hazardous labor." (*id.* ¶ 45; *see id.* ¶¶ 28, 61.)  She alleges that child labor is endemic in açaí production because most adults are too heavy to scale the thin trees to harvest the fruit, (*id.* ¶¶ 46-49), and that Sambazon "buys fruit outside its registered network, exposing it to the possibility of purchasing fruit harvested by children," (*id.* ¶ 54).  Likewise, Plaintiff asserts that Ecocert's representations about FFL certification are false and misleading, (*id.* ¶ 44), and its partnership with Sambazon furthers the consumer deception through collusion to profit from the Products' deceptive marketing, (*id.* ¶¶ 16-17, 55).  In Plaintiff's view, "Sambazon and Ecocert are fully aware that consumers are willing to pay more for 'ethically sourced' products . . . and the Products are priced accordingly," commanding a "premium" for the Products "as compared to açaí products that do not make similar promises to consumers."  (*Id.* ¶ 67.)   Plaintiff alleges that when she purchased the Fresh Juice, she "saw and believed that the Products support fair wages and labor practices, based upon the Products' packaging and [FFL] certification."  (*Id.* ¶ 78.)  She alleges that the fair-trade representations about the Products were material to her and that she relied on them in making her purchases.  (*Id.* ¶ 80.)  Plaintiff asserts that had she known that the "Products were sourced using child labor," (*id.* ¶¶ 81-82), she would not have purchased them on the same terms, would have purchased less of them, or would have paid less, (*id.*).

### B.    Procedural History

Plaintiff filed her initial complaint on April 7, 2023.  (ECF No. 1.)  On July 18, 2023, and September 1, 2023, Ecocert and Sambazon filed their respective pre-motion letters in anticipation of a motion to dismiss.  (ECF Nos. 17, 20.)  At the pre-motion conference on

September 22, 2023, the Court granted Plaintiff leave to amend the complaint and set a briefing schedule.  (*See* Minute Entry dated Sept. 22, 2023.)  On October 25, 2023, Plaintiff filed the FAC, which is the operative complaint.  (ECF No. 29.)  The FAC asserts claims for:   (1) violations of §§ 349 and 350 of the New York General Business Law ("GBL"), and (2) breaches of express warranty.  (FAC ¶¶ 101-138.)  Plaintiff seeks to represent a class of all similarly situated persons nationwide who purchased the Products during the Class Period, including a subclass of persons who purchased the Products in New York, (*id.* ¶¶ 87-100), and seeks both monetary damages and costs and expenses, including attorneys' fees, (*id.* at 24-25.)  The instant motions followed.  (*See* ECF Nos. 31, 37.)

## II.    <u>LEGAL STANDARDS</u>

### A.    <u>FRCP 12(b)(1)</u>

"When a defendant moves to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction and also moves to dismiss on other grounds, the Court usually must consider the Rule 12(b)(1) motion first."  *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 123 (S.D.N.Y. 2021) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674 (2d Cir. 1990)).[5] "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see Seljak v. Pervine Foods, LLC*, No. 21-CV-9561, 2023 WL 2354976, at *4 (S.D.N.Y. Mar. 3, 2023).  Where a party lacks standing to bring a claim, the court lacks subject-matter jurisdiction over that claim and must dismiss it.  *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"The party invoking federal jurisdiction bears the burden of establishing" that it exists, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and "the plaintiff must allege facts that affirmatively and plausibly suggest that [she] has standing to sue," *Seljak*, 2023 WL 2354976, at *4. "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim,* 838 F.3d 129, 134 (2d Cir. 2016); *see Tyrnauer v. Ben & Jerry's Homemade, Inc.*, No. 23-CV-299, 2024 WL 3346840, at *6 (D. Vt. Jul. 8, 2024); *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 88 (S.D.N.Y. 2022). And while "'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it,'" *Kell v. Lily's Sweets, LLC*, No. 23-CV-147, 2024 WL 1116651, at *2 (S.D.N.Y. Mar. 13, 2024) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)), the Court, on a facial challenge to subject-matter jurisdiction, "presume[s] that general allegations embrace those specific facts that are necessary to support the claim," *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 58 (2d Cir. 2016). Furthermore, "a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

## B.    FRCP 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While FRCP 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).[6]

When deciding a motion to dismiss under Rule 12(b)(6):

> a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. For a document

---

[6] Plaintiff cites the appropriate *Twombly* and *Iqbal* plausibility standard in her opposition to Sambazon's motion, (*see* ECF No. 35 ("P's Opp. to Sambazon") at 9-10), but in her opposition to Ecocert's motion, she cites in addition the old "no set of facts" standard, (ECF No. 38 ("P's Opp. to Ecocert") at 10). That standard, based on *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), was "retire[d]" by the Supreme Court in 2007 in *Twombly*, *see* 550 U.S. at 562-63. No attorney should be citing to or relying on the "no set of facts" standard seventeen years after it has been overruled.

> to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint[;] mere notice or possession is not enough.  And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States of America ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *see Solano v. New York*, No. 20-CV-1378, 2021 WL 4134793, at *3 (N.D.N.Y. Sept. 10, 2021); *170 Mercer LLC v. Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25, 2021); *Ehlers v. Ben & Jerry's Homemade Inc.*, No. 19-CV-194, 2020 WL 2218858, at *4 (D. Vt. May 7, 2020).  A court may also consider matters "of which judicial notice may be taken under Fed. R. Evid. 201."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). This includes information on a party's publicly available website, as long as the authenticity of the site is not in dispute, but such information may be considered only for the fact that it was said, not for its truth.  *Cotiviti, Inc. v. McDonald*, No. 19-CV-6559, 2021 WL 2784529, at *6 (S.D.N.Y. July 2, 2021).  Here, materials on the Defendants' websites related to the Products' packaging and FFL certification, such as Products' labels and the FFL certification standards, are properly before the Court because they are incorporated by reference and integral to the FAC. *See, e.g.*, *Foreman*, 19 F.4th at 106; *Ehlers*, 2020 WL 2218858, at *4.  They also meet the standards for judicial notice.  Thus, the Court may consider those items in adjudicating these motions.

## III.   DISCUSSION

### A.    Article III Standing

 "Constitutional standing is the threshold question in every federal case, determining the power of the court to entertain the suit."  *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001).  To establish the constitutional minimum of standing, a plaintiff must show the

following three elements: "(i) that [plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560-61); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Fishon*, 620 F. Supp. 3d at 89.  To represent a class, a plaintiff must first establish personal standing.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021).

Sambazon argues that Plaintiff has not shown that she suffered a concrete injury in fact sufficient to confer Article III standing.  (ECF No. 34 ("Sambazon's Mem.") at 7-8; ECF No. 36 ("Sambazon's Reply") at 3-6.)  Specifically, Sambazon contends that while Plaintiff purchased only the Fresh Juice, (FAC ¶ 77), the FAC relies on representations from the separate packaging of the Superfruit Packs – a different product that Plaintiff did not purchase, (Sambazon's Mem. at 7).[7]  Plaintiff does not allege what representations are contained on the particular packaging of the Fresh Juice that she purchased, and Sambazon argues that Plaintiff cannot assert claims based on statements that she did not see before her purchase, such as those on the Superfruit Packs and on Defendants' websites.  (*See id.* at 5, 8-10.)  Plaintiff responds that she has Article III standing because the FAC plausibly alleges that Plaintiff suffered an injury in fact by paying a price premium for the purportedly misbranded Fresh Juice, her economic injury is directly traceable to the misleading representations, and her GBL and breach of warranty claims will redress the harm

---

[7] The FAC alleges that Plaintiff "purchased Sambazon's Original Açaí Fresh Juice, one of the Products at issue." (FAC ¶ 77.)  It also alleges that had she known that Defendants' representations were false, she "would not have purchased the Products." (*Id.* ¶ 81.)  I will assume that the use of the plural in the latter paragraph is either careless drafting or intended to refer to multiple purchases of the Fresh Juice, and not an attempt to mislead.  In any event, in her brief Plaintiff concedes that she only purchased the Fresh Juice.  (*See* P's Opp. to Sambazon at 11, 13-14.)

to her.  (*See* ECF No. 35 ("P's Opp. to Sambazon") at 16-18; *see id.* at 11-15.)  While Plaintiff concedes that the Fresh Juice product that she purchased does not include the phrase "Fair Wages & Labor Practices" on its label, she argues that the FAC "makes clear that 'Fair Wages & Labor Practices' is ***just one example*** of Sambazon's 'numerous representations to consumers about its fair and ethical production practices.'"  (P's Opp. to Sambazon at 11 (emphasis in original).)  Plaintiff characterizes the labeling of the unpurchased Superfruit Packs as an exemplar of Sambazon's marketing, and she includes a chart of Sambazon's purported representations regarding the Products and the FFL certification.  (*See id.* at 11-12.)  She asserts that the Fresh Juice label contained some of these representations, such as the FFL certification logo and the phrase "fair trade certified," (*see id.* at 13), and that these representations, along with others found on the unpurchased Superfruit Packs' label and on Defendants' websites, materially misled her to purchase the Fresh Juice, (*see id.* at 13-15).

It is well established that pleading economic injury from a misbranded product under an overpayment or price premium theory constitutes a cognizable injury for Article III standing at the pleading stage.  *See, e.g.*, *Hardy v. Olé Mexican Foods, Inc.*, No. 22-1805, 2023 WL 3577867, at *1 (2d Cir. May 22, 2023) (summary order) (paying price premium for product plaintiff would not have otherwise bought if he had known it was not made in Mexico was cognizable injury); *Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) (summary order) ("As for Article III standing, Axon has suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury – paying a premium – as a result."); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) ("[N]o one disputes that overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact."); *Lurenz v. Coca-Cola Co.*, No. 22-CV-10941, 2024

WL 2943834, at *2 (S.D.N.Y. June 10, 2024) ("The price-premium theory of injury has been broadly accepted in the Second Circuit."); *Wiggins v. Unilever United States, Inc.*, 684 F. Supp. 3d 127, 141 (S.D.N.Y. 2023) (to the same effect) (collecting cases).

Here, Plaintiff has sufficiently alleged that she purchased the Fresh Juice in reliance on Defendants' alleged misrepresentations, and that she would not have purchased it, or would have paid less for it, had she known the truth about its alleged unethical sourcing. (*See* FAC ¶¶ 81-82, 105, 119.) In other words, Plaintiff contends that she suffered an economic injury under a price-premium theory by overpaying for the Fresh Juice based on its FFL certification that she believes represents that the juice is produced ethically and without using child labor, which is misleading because the certification does not actually prevent, or ensure the prevention of, unethical and harmful practices. (*See* FAC ¶¶ 12-15, 44, 61-67, 77-82, 105, 119.) These allegations satisfy Article III standing's injury-in-fact requirement as to the Fresh Juice. *See, e.g.*, *Axon*, 813 F. App'x at 703-04; *Wiggins*, 684 F. Supp. 3d at 141; *Fishon*, 620 F. Supp. 3d at 97; *Colpitts*, 527 F. Supp. 3d at 575. It further appears that Plaintiff would have standing to pursue a class action based on other Sambazon products that she did not buy but which bear similar representations as the Fresh Juice, as such products would "implicate the same set of concerns," *Hardy*, 2023 WL 3577867, at *1, but that determination is subject to review at the class certification stage, *Seljak*, 2023 WL 2354976, at *5 ("Courts in this Circuit have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that [s]he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are sufficiently similar to the product[] that the named plaintiff did purchase. Where the defendant did not actually injure a named plaintiff, however, the claims of putative class members are too dissimilar to support

standing."); *see Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 188 (S.D.N.Y. 2016); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at \*10 (S.D.N.Y. Aug. 12, 2016).

To be sure, some cases support Sambazon's argument that a plaintiff like West lacks standing if she cannot plausibly allege that the representations that she saw injured her. *See Tyrnauer*, 2024 WL 3346840, at \*8-9 (no standing where plaintiffs failed to identify an affirmative representation that no child labor used in production of defendant's ice cream); *Lurenz*, 2024 WL 2943834, at \*2 ("Even when asserting a price-premium theory, however, plaintiffs still must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief."); *Kraus v. Snow Teeth Whitening LLC*, No. 20-CV-6085, 2022 WL 4642170, at \*5-7 (E.D.N.Y. Sept. 15, 2022) (plaintiff lacked standing where he did not see or rely on any advertisements identified in the amended complaint, and conclusory allegations that he replied on representations on websites selling the products did not cure that deficiency), *report and recommendation adopted*, 2022 WL 4662819 (E.D.N.Y. Sept. 30, 2022); *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (plaintiff lacked standing where she did not read or rely on defendant's endorsement of product, because she could not "plausibly allege an injury traceable to" that defendant).   But other cases treat this inquiry as an FRCP 12(b)(6) merits issue, rather than an Article III standing issue. *See Bibicheff v. PayPal, Inc.*, 844 F. App'x 394, 396 (2d Cir. 2021) (summary order); *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200-01 (2d Cir. 2019); *Chimienti v. Wendy's Int'l, LLC*, 698 F. Supp. 3d 549, 557 (E.D.N.Y. 2023); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020).   Whether a plaintiff has Article III standing is a distinct inquiry from whether a plaintiff has pleaded a plausible claim under GBL §§ 349 and 350 or can represent a class, *see*

*Fishon*, 620 F. Supp. 3d at 90 (for standing purposes party can be sufficiently aggrieved by price premium without having relied on representation) (collecting cases); *Kacocha*, 2016 WL 4367991, at *7 (Article III jurisdiction survives at least some variation in representations seen by named plaintiff and other class members), and it would seem to conflate those questions to find an absence of Article III standing on the basis that the named plaintiff did not plausibly rely on specific representations, or that her injury was not caused by them, where she adequately pleads that she overpaid because of them.  Here, Plaintiff says that she saw at least some representations and would not have bought the product, or paid as much for it, if she had not been deceived into thinking that no child labor was involved in the production, which is enough to establish Article III standing.  Whether her claims that she suffered an injury caused by Defendants' alleged deception are plausible is a 12(b)(6) merits issue, *see Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 239 (S.D.N.Y. 2022); *Richardson v. Edgewell Personal Care, LLC*, 653 F. Supp. 3d 67, 74 n.3 (S.D.N.Y. 2023), *vacated on other grounds*, No. 23-128, 2023 WL 7130940 (2d Cir. Oct. 30, 2023) (summary order), to which I turn next.

    **B.**    <u>Failure to State a Claim[8]</u>

        **1.**    **New York General Business Law Claims**

    Plaintiff's first two causes of action arise under §§ 349 and 350 of the GBL.  The former prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," N.Y.

---

    [8] "Although personal jurisdiction is a threshold inquiry, and ordinarily addressed prior to the merits of substantive claims, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues."  *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 524 (S.D.N.Y. 2018).  Because only Ecocert moved to dismiss the FAC for lack of personal jurisdiction in addition to failure to state a claim, (*see* ECF No. 37 at 1), I address the Defendants' FRCP 12(b)(6) arguments first.  *See Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 699 (S.D.N.Y. 2021) ("[I]n cases involving multiple defendants – over some of whom the court indisputably has personal

Gen. Bus. Law § 349, and the latter prohibits "[f]alse advertising in the conduct of any business, trade or commerce," *id.* § 350. "The standard for recovery under § 350, while specific to false advertising, is otherwise identical to § 349, and therefore the Court will merge its analysis of the two." *Herceg v. Chobani, LLC*, No. 22-CV-5137, 2023 WL 6162939, at *4 (S.D.N.Y. Sept. 21, 2023). To state a claim under either section, a plaintiff must plausibly allege "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Herceg*, 2023 WL 6162939, at *4.

"New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading: whether the alleged act is likely to mislead a reasonable consumer acting reasonably under the circumstances." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022). "To survive a motion to dismiss, a plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Id.* Instead, "a plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* "Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021). When evaluating what a reasonable consumer would believe, the Court must

---

jurisdiction – in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, the Second Circuit has proceeded directly to the merits of a motion to dismiss."); *Sonterra*, 366 F. Supp. 3d at 524 (to the same effect).

consider the entire context.  *See Seljak*, 2023 WL 2354976, at *13 ("allegedly deceptive act must

be looked upon in light of the totality of the information made available to the plaintiff").

Defendants are correct that Plaintiff cannot state a claim upon which relief can be

granted.  (*See generally* Sambazon's Mem.; ECF No. 37-1 ("Ecocert's Mem.").)  The bulk of the

alleged misrepresentations that Plaintiff identifies in the FAC regarding ethical sourcing and

Defendants' commitment to ensuring that the Products are produced free from child labor are

found on Defendants' websites.  (*See* FAC ¶¶ 24-28, 31-38, 41-42; *see also* Sambazon's Reply at

3-4.)  But Plaintiff does not allege that she saw these representations before she purchased the

Fresh Juice.  To the contrary, the FAC alleges that Plaintiff "additionally saw and believed that

the Products support fair wages and labor practices, and were free from child labor, based upon

the Defendants' website," (FAC ¶ 79), without specifying when Plaintiff saw these websites or

alleging that she saw them before purchasing the Fresh Juice.  Despite her artful pleading, it is

clear that the only representations Plaintiff purports to have seen before she bought the Fresh

Juice are what was on the product's label.  This is obvious not only because the Fresh Juice

labeling and its FFL certification are all that she claims to have seen "when she purchased the

[Fresh Juice] Product," (*id.* ¶ 78) – with the conspicuous absence of the quoted language from

her allegation regarding what she claims to have seen on Defendants' websites, (*see id.* ¶ 79),

making plain that she had not seen the websites as of the time of purchase – but because the

Court discussed this exact issue with Plaintiff's counsel at the pre-motion conference, and

Plaintiff's counsel said that Plaintiff would amend the Complaint to indicate that she had seen

the websites "if it's possible," (*see* ECF No. 41 at 3:7-12, 4:4-14).  Plaintiff did not do so.

GBL §§ 349 and 350 claims cannot succeed if the plaintiff did not see the alleged

misrepresentations before purchasing the product.  *See Grossman v. GEICO Cas. Co.*, No. 21-

2789, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022) (summary order) ("But Plaintiffs do not allege that they saw GEICO's advertisements of the Giveback Program, in particular the allegedly misleading 'these savings' statement, before they chose to renew their insurance policies."); *Chimienti*, 698 F. Supp. 3d at 557 ("If a plaintiff is challenging a misleading advertisement, [s]he must therefore allege that [s]he saw any of these statements before [s]he purchased the defendant's product."); *Lugones*, 440 F. Supp. 3d at 240 ("Plaintiffs allege that they checked Defendant's website, but they do not allege that they viewed it prior to purchasing Nellie's Free Range Eggs.  Plaintiffs cannot show either that they relied on Defendant's website prior to purchasing the eggs or that the various statements on Defendant's website caused their injury, and therefore the only relevant alleged misrepresentations are those that were presented on the containers."); *cf. Tyrnauer*, 2024 WL 3346840, at *5 (court considered alleged misrepresentations on website where plaintiffs alleged that they reviewed and relied on them before purchasing the products); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) ("But Silva himself has pled that he relied in part on the website's representations in purchasing Natural Brew. . . .").

Thus, the question is whether what Plaintiff saw on the label of the Fresh Juice was deceptive.  One would think that the FAC would include that label, but it does not.  Rather, seemingly intending to muddy the waters with respect to the representations that she saw before purchasing the Fresh Juice, Plaintiff (as noted) presents in the FAC only the label of a different product that contains different representations,[9] while consistently referring collectively to the

---

[9] Plaintiff effectively concedes that the Superfruit Packs' label, which is included in the FAC, contains different representations than the packaging of the Fresh Juice, such as the phrase "Fair Wages & Labor Practices," which does not appear on the Fresh Juice label.  (*See* P's Opp. to Sambazon at 11.)

representations on the "Products."  (*See generally* FAC.)  But a plaintiff may not combine

representations from different sources – many of which she does not allege to have seen before

her purchase – to create a non-existent "label" for the Fresh Juice.  "The primary evidence in a

consumer-fraud case arising out of allegedly false advertising is, of course, the advertising

itself."  *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).  In her opposition to

Sambazon's motion, Plaintiff states that the Fresh Juice packaging displays two representations:

the phrase "fair trade certified" and the FFL certification.  (P's Opp. to Sambazon at 13.)  She

also directs the Court to Sambazon's website for the product, which provides the following label:



Organic Acai Juice - Best All-Natural, Antioxidant Fruit Juice | SAMBAZON,

https://www.sambazon.com/products/original-acai-fresh-juice (last visited Sept. 23, 2024).[10]

The Court discerns the words "fair trade" on the front label and the FFL badge on the back label.

The words "fair trade certified" appear only as part of the representation on the back label that

the juice's açaí and sugar from Brazil is "fair trade certified according to the Fair for Life

standard." (*Id.*) The term "fair trade certified" thus seems to duplicate the FFL badge.[11]

Plaintiff does not plausibly allege what is inaccurate about this label. She confines her

argument to Ecocert's FFL certification (alleging nothing about what she inferred from the

words "fair trade" on the front of the Fresh Juice label), but she does not allege that the product

does not have the FFL certification or does not meet the FFL certification standards. *See

Herceg*, 2023 WL 6162939, at \*6; *Dwyer*, 598 F. Supp. 3d at 149-50; *Lee v. Canada Goose US,

Inc.*, No. 20-CV-9809, 2021 WL 2665955, at \*6 (S.D.N.Y. June 29, 2021). Simply because the

standards do not mean that zero child labor is used in the production of the product does not

render the statements false or misleading. Rather, Plaintiff merely thought that the FFL

certification meant more than either Defendant ever said that it means – that the certification

served as a guarantee – or at least she thinks that it should represent more than it really means.[12]

---

[10] Plaintiff provided this hyperlink to the Fresh Juice in her briefing. (*See* P's Opp. to Sambazon at 13 ("A simple online search reaches the same page: https://www.sambazon.com/products/original-açai-fresh-juices (last visited Dec. 19, 2023).".) Sambazon does not dispute the accuracy of the referenced label.

[11] The back label also states, "83% Fair trade ingredients." (*Id.*)

[12] Plaintiff's claim that Defendants' website suggests that the FFL certification is a guarantee, (*see* FAC ¶¶ 8-11, 22-28, 33-38, 97, 123; P's Opp. to Sambazon at 12, 19-20, 23-24; P's Opp. to Ecocert at 27-29), is disingenuous because Plaintiff takes those words out of context, (*see* ECF No. 37-3 at 6, 10-11, 27; *see also* Sambazon's Mem. at 11-13; Ecocert's Mem. at 21-22). "A plaintiff who alleges that [s]he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in [her] pleadings and expect [her] action

But she has not alleged facts identifying how the words "fair trade" and the FFL certification logo on the Fresh Juice label plausibly represent to reasonable consumers a guarantee that Sambazon invariably produced the Fresh Juice without unfair labor practices or an individual under the age of eighteen ever entering the açaí supply chain.  *See Tyrnauer*, 2024 WL 3346840, at *8 (plaintiffs failed to identify a representation affirming that no child labor was used in production of Ben & Jerry's ice cream based on product's packaging, which included phrase "Fairtrade"); *see also Myers v. Starbucks Corp.*, No. 22-55930, 2024 WL 3102800, at *1 (9th Cir. June 24, 2024) ("Mars's Dove Dark Chocolate label does not represent that Rainforest Alliance Certified farms avoid deforestation and the use of child labor.").  Plaintiff's issue is really her "subjective, abstract, and intangible," *Tyrnauer*, 2024 WL 3346840, at *10, disappointment that the FFL certification standards do not prevent child labor or unfair labor practices.  But "[t]hat Plaintiff . . . believes that Defendant should use a different certification process does not plausibly suggest that what Defendant in fact says is materially misleading." *Herceg*, 2023 WL 6162939, at *6; *see Dwyer*, 598 F. Supp. 3d at 150 (to the same effect); *Lee*, 2021 WL 2665955, at *6 ("[T]he alleged inadequacy of the standards imposed is not enough to render the statements actionable.").

Because Plaintiff does not challenge the certification itself or whether the Fresh Juice is actually FFL certified, (s*ee* P's Opp. to Sambazon at 19-20), the FFL certification logo itself is an "accurate and lawful," rather than deceptive, representation, *see Geffner*, 928 F.3d at 201; *Harris*, 586 F. Supp. 3d at 243-44.  Plaintiff contends that she is not challenging the FFL standards but rather Defendants' representations about what the FFL certification means.  (*See*

---

to survive a motion to dismiss or, indeed, to escape admonishment."  *Fink*, 714 F.3d at 742.  But in any event, Plaintiff does not allege that she saw those statements prior to purchasing the Fresh Juice, so she cannot say that they caused her to be deceived.

P's Opp. to Sambazon at 19-20; ECF No. 38 ("P's Opp. to Ecocert") at 23-27.)  Yet this is precisely the argument rejected in *Herceg* as "a distinction without merit" because "Plaintiff's allegations are, at their core, challenging the sufficiency of the standards of the certification, with which Defendant states that they are complying."  *Herceg*, 2023 WL 6162939, at *6.  In fact, Plaintiff's theory here is even more implausible because she does not claim to have seen any of Defendants' representations about what the FFL certification means before she purchased the Fresh Juice.

To the extent that Plaintiff cites to *Lee* for support and suggests that the *Lee* court found the certification at issue in that case to be misleading, (*see* P's Opp. to Ecocert at 24-25), Plaintiff is mistaken.  In *Lee*, the court dismissed the claims relating to defendant's statements that it met the certification standards.  *See* 2021 WL 2665955, at *6 ("That the relevant standards may nonetheless be inhumane or inadequate does not render Defendants' representations as to compliance false or misleading.").  Instead, the court denied the motion to dismiss only with respect to defendant's statement on the product's hangtag that it was "committed to supporting the ethical, responsible, and sustainable sourcing and use of real fur" for its outerwear, because the complaint alleged that defendant obtained fur from trappers using inhumane methods despite defendant's affirmative commitment to source the fur in an ethical and sustainable manner.  *Id.* at *7.  There is no analogous statement made by Defendants and seen by Plaintiff here.  Plaintiff does not explain what would make her – or, more to the point, a reasonable consumer – think, when buying the Fresh Juice, that the term "fair trade" or the FFL certification meant anything in particular, let alone that they guarantee no child labor or unfair labor practices ever enter the supply chain.  Ultimately, Plaintiff's interpretation of the Fresh Juice label is an idiosyncratic

reading that cannot support her GBL claims.[13]  *See Harris*, 586 F. Supp. 3d at 243-44 ("A plaintiff does not have a claim under the GBL just because she comes away from an advertisement with an incorrect impression.  That impression must be reasonably traceable to a misleading statement from the defendant."); *Geffner*, 928 F.3d at 200-01 (dismissing GBL claim where plaintiffs' allegation – that the term "diet" in "Diet Coke" indicated that the drink would cause weight loss – was implausible on its face); *Ehlers*, 2020 WL 2218858, at *7 ("A representation does not become false and deceptive merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.")*; see also Sorkin v. Kroger Co.*, No. 23-C-14916, 2024 WL 3673719, at *4 (N.D. Ill. Aug. 6, 2024) ("[Plaintiff] is attempting to impute meaning that is not fairly derived from the labeling itself.").

Thus, Plaintiff's GBL §§ 349 and 350 claims must be dismissed.

### 2.    Breach of Express Warranty

Plaintiff also alleges that Defendants breached an express warranty.  (*See* FAC ¶¶ 121-138.)  An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  N.Y. U.C.C. Law § 2-313(1)(a).  "While no formal wording is necessary to create an express warranty, there must be a

---

[13] Even considering the additional representations on the label of the unpurchased Superfruit Packs does not change this result.  Plaintiff points to two additional representations on that label that she alleges are misrepresentations regarding the use of child labor in the production of Sambazon's açaí products overall:  (1) the phrase "Fair Wages & Labor Practices," and (2) the sentence, "Every time you enjoy Sambazon Açaí, you're helping protect the Amazon's incredible biodiversity and directly giving back to family farmers who harvest wild Açaí with us."  (FAC ¶ 20.)  But these alleged misrepresentations suffer from the same issues as the "fair trade" and FFL certification statements above – they neither mention child labor nor amount to an affirmative representation that no child labor has ever occurred in the production of the Fresh Juice.

representation of fact or specific promise about the product, rather than an expression of opinion." *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) (citing N.Y. U.C.C. Law § 2-313(2)).

The FAC alleges that Sambazon provided her with an express warranty that "'Fair Wages & Labor Practices' are employed in the Products' production and that the Products' Fair for Life certification ensures that 'no child/slave labor occurs' in the Products' supply chain," (FAC ¶ 123), and that Ecocert provided an express warranty that "by virtue of the Products' [FFL] certification, that [*sic*] no child labor occurs in the Products' supply chain . . .," (*id.* ¶ 132).  But Plaintiff has not alleged that she saw any such statements before buying the Fresh Juice, and she cannot salvage her claims by attempting to read into the Fresh Juice label content that is not there.  As discussed above, she has not alleged that the Fresh Juice product "do[es] not comport with the statements on [its] packaging, and thus has failed to allege a breach of any warranty." *Herceg*, 2023 WL 6162939, at *8; *see Inong v. Fujifilm N. Am. Corp.*, No. 22-CV-9720, 2024 WL 291226, at *5 (S.D.N.Y. Jan. 25, 2024) ("This claim fails for the additional reason that it is premised on the same unreasonable reading of the same advertising statements as [plaintiff's] consumer fraud claims."); *Seljak*, 2023 WL 2354976, at *15 (to the same effect).  Plaintiff does not plausibly allege that the Fresh Juice product fails to comply with the FFL certification standards, and the certification is not deceptive merely because Plaintiff believes that those standards are inadequate.  *See Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 119 (E.D.N.Y. 2021) ("The scope of an express warranty necessarily depends on what a reasonable consumer would believe.  In other words, warranty claims apply the same 'reasonable consumer' standard as that analyzed under New York's consumer protection law."); *see also Herceg*, 2023 WL 6162939, at *8 ("At best, Plaintiff has alleged that Defendant[s have] indeed followed the

[FFL certification] standards, which is what is represented on the [Fresh Juice.]").  Because the Fresh Juice's packaging – including the FFL certification – would not materially mislead a reasonable consumer under GBL §§ 349 and 350, Defendants have not breached any purported express warranties established by those representations.  *See Warren*, 574 F. Supp. 3d at 119; *Herceg*, 2023 WL 6162939, at *8.

Finally, Plaintiff alleges that she purchased the products at different retail stores across Connecticut and New York, (FAC ¶ 77), not from the Defendants directly.  She thus fails to plead the required privity to support her breach of express warranty claims.  *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 101 (2d Cir. 2023) ("[U]nder New York law, express and implied breach of warranty claims seeking to recover for financial injuries, like those here, require a showing of privity between the manufacturer and the plaintiff unless an exception applies."); *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679, 2024 WL 416495, at *11 (E.D.N.Y. Jan. 30, 2024) ("[W]here, as here, Plaintiff alleges only economic injury there must be privity, and since he purchased the Refrigerator from Plesser's and not Defendant, no claim for breach of express or implied warranty exists."); *Ashour v. AriZona Beverages USA LLC*, No. 19-CV-7081, 2022 WL 14038713, at *3 (S.D.N.Y. Oct. 24, 2022) ("Plaintiffs have not alleged privity, as they plead that Townes purchased the products from retail stores in New York, not from Defendants.").[14]

---

[14] A recent Eastern District of New York case took the view that *MacNaughton* was incorrectly decided in light of the New York Court of Appeals decision in *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5 (N.Y. 1962), and recent New York Appellate Division decisions.  *See Cohen v. Nutricost*, No. 23-CV-6387, 2024 WL 3875944, at *11-13 (E.D.N.Y. Aug. 20, 2024).  I am inclined to follow the Second Circuit's opinion in *MacNaughton*, and in any event the claims for a breach of express warranty fail for the other reasons set forth above.

Accordingly, Plaintiff's express warranty claims must also be dismissed.[15]

## C.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments

previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*,

514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff requests leave to amend the FAC a second time "to the extent that the Court

grants any portion of [Sambazon's] motion to dismiss."  (P's Opp. to Sambazon at 29.)  Plaintiff

has already amended her complaint once, after receiving pre-motion letters outlining the grounds

on which Defendants planned to move to dismiss, (*see* ECF Nos. 17, 20), as well as the Court's

observations during the pre-motion conference, (*see* ECF No. 41).  In fact, Sambazon's pre-

motion letter specifically highlighted that Plaintiff did not claim to have seen most of the

representations upon which she relies, (*see* ECF No. 20 at 3 n.3), and the Court raised this issue

at the pre-motion conference, (*see* ECF No. 41 at 3:7-12, 4:4-14).  Moreover, the Court also

raised the question of whether Ecocert's website states – anywhere – that the FFL certification

guarantees that a manufacturer meets every associated standard.  (*See id.* at 4:15-5:11, 6:7-7:6.)

Generally, the failure to fix deficiencies in the previous pleading, after being provided

notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union*

---

[15] Having dismissed Plaintiff's claims in their entirety for failing to state a claim upon which relief can be granted, the Court need not address Ecocert's motion to dismiss the FAC for lack of personal jurisdiction.  *See In re Bystolic Antitrust Litig.*, 583 F. Supp. 3d 455, 495-96 (S.D.N.Y. 2022) (collecting cases), *aff'd sub nom. Watson Lab'ys, Inc.*, 101 F.4th 223 (2d Cir. 2024).

*Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was

aware of the deficiencies in h[er] complaint when [s]he first amended, [s]he clearly has no right

to a second amendment even if the proposed second amended complaint in fact cures the defects

of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the

presentation of theories *seriatim*."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d

222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two

opportunities to cure the defects in their complaints, including a procedure through which the

plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the

defendants and given a chance to amend their Consolidated Amended Complaint," and

"plaintiffs have not submitted a proposed amended complaint that would cure these pleading

defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per

curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of

the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiff has not suggested that she is in possession of facts that would cure the

deficiencies identified in this ruling.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505

(2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how

amendment would cure pleading deficiencies in complaint); *Gallop v. Cheney*, 642 F.3d 364,

369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any

indication plaintiff could or would provide additional allegations leading to different result);

*Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30,

2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure

the deficiencies identified by the Court"); *Schwasnick v. Fields*, No. 08-CV-4759, 2010 WL

26

2679935, at *11 (E.D.N.Y. June 30, 2010) (leave to amend properly denied where plaintiff does not submit proposed amended complaint).

Accordingly, the Court declines to grant Plaintiff leave to amend a second time.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss for failure to state a claim are GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 31, 37), and to close the case.

**SO ORDERED.**

Dated: September 26, 2024
         White Plains, New York

_____
                 CATHY SEIBEL, U.S.D.J.